# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KRISTEN BEHRENS, ESQ.,** as Administratrix, et al.<br><br>v.<br><br>**ARCONIC, INC.,** et al. | **CIVIL ACTION**<br><br>**NO. 19-2664** |

**Baylson, J.**                                                                                                       **October 2, 2019**

## MEMORANDUM RE: DISCOVERY FROM ARCONIC DEFENDANTS

The Complaint in this case concerns 247 plaintiffs, following a disastrous and tragic fire in London at an apartment complex known as the Grenfell Tower, on June 14, 2017. The complaint was filed on June 6, 2019 in the Philadelphia Court of Common Pleas and promptly removed to this Court pursuant to the Class Action Fairness Act. The Court convened a Rule 16 conference on July 17, 2019 and set a schedule for various motions.

Following that schedule defendants have filed motions to dismiss under Rule 12, and, also under the doctrine of *forum non conveniens* ("FNC"). Defendants also filed a joint appendix containing 51 exhibits, including numerous declarations and other documents, consisting of hundreds of pages.

Briefing has not yet been completed.

Discovery is relevant on the Defendants' Motions. Defendants have opposed this motion (ECF 54) but, first disclosed in Plaintiff's reply brief, on September 27, 2019 (ECF 55), two of the three Defendants, have agreed to produce some documents and some depositions testimony.

On September 13, 2019, Plaintiffs filed a Motion to Compel against all Defendants asserting that the discovery which Plaintiffs initiated as relevant on the Defendants' Motions was not forthcoming. (ECF 52.) Defendants opposed this Motion (ECF 54) but Plaintiffs' reply brief

(ECF 55) stated that two of the three Defendants now have agreed to produce some documents and produce some deposition testimony. However, the Arconic Defendants have refused to produce any discovery.[1]

For several reasons, as follows, Arconic Defendants' objection to producing any discovery will be overruled, and Plaintiffs' Motion for at least some discovery from the Arconic Defendants will be granted.

Although both sides cite numerous cases where courts have either allowed or denied discovery on a pending motion to dismiss under the FNC doctrine, none of the cases have a similarity to the present one, which is unique in the severity of the injuries suffered and the number of plaintiffs. In a case relied on by Defendants decided by the undersigned, Copia Communications, LLC v. AM Resort, LP, 2017 WL 4012687 (E.D. Pa. 2017), the factual background was totally different.

Considering the concept of proportionality, Plaintiffs have by far the better argument. The severity of the tragic fire, which resulted in 72 deaths, and numerous cases of sustained personal injury and property damage, is virtually unprecedented. This Court will allow Plaintiffs fair discovery in opposing the Defendants' Motions, but also in securing documents and testimony located in the United States that may be relevant on issues of liability and damages.

Many of the older cases denying discovery on the FNC doctrine were before the era of electronically-stored information ("ESI"). Given the ease of transferring data and information across borders, the fact that this tragedy took place in England does not necessarily mean that relevant information is not located in the United States. Some documents and facts and testimony may only be available in England, or available in the United States. Ease of recovery, through

---

[1] Although a discovery conference was scheduled for October 2, the Court, on learning of this new development, cancelled the conference as premature. The Court regrets any inconvenience as a result of last minute cancellation.

pretrial discovery as followed in the United States, but not necessarily followed in England, may warrant important discovery to take place in this Court, notwithstanding the existence of other legal remedies, whether adequate or not, in England.[2]

The Court is not necessarily endorsing all of Plaintiffs' discovery requests at this time. However, the Court cannot ignore the fact that two of the three defendant corporations have agreed to produce some documents and at least some deposition testimony, but the Arconic Defendants have refused to produce anything.

The Court will direct that counsel for Plaintiffs and Arconic Defendants commence a substantive "meet and confer" process to determine whether a resolution can be achieved, at least on the initial phase of document production and deposition testimony from individuals who are knowledgeable about issues relevant to the Defendants' Motions and/or about the ESI possessed by the Arconic Defendants and/or available to them in this country.

At some point, either the Parties will agree, or the Court will rule, what discovery is relevant before the Court decides Defendants' Motions.

Although the Defendants assert that none of their products were manufactured or sold within the United States, that fact does not necessarily fully answer the FNC motion, but indeed is a relevant factor. Another relevant factor is what damages are available in the United Kingdom. The volume of materials submitted so far is huge, and any quick decision is not feasible.[3]

---

[2] See the Federal Judicial Center Handbook entitled DISCOVERY IN INTERNATIONAL CIVIL LITIGATION (2015) at pages 78-82, which discusses discovery in the United Kingdom. The first sentence reads "Pretrial discovery of documents as understood in the United States is not available in the United Kingdom." The author states the parties can get additional documents and testimony subject to getting a court order. Access to facts through pretrial discovery may be a factor to be considered in the FNC analysis.

[3] As to factors that control cross border discovery, a number of organizations have prepared informative policy statements and guides. See RESTATEMENT (3D) OF FOREIGN RELATIONS LAW by the American Law Institute, and the principles adopted by the Sedona Conference.

---

Sedona advocates a three stage approach for resolving disputes between U.S. discovery rules and overseas data protection laws: seeking stipulations by the parties, scheduling orders by the Court as necessary, and implementation of a plan to maximize simultaneous compliance with the foreign data protection laws and U.S. discovery obligations. Protective Orders may be essential on these issues. Duke Law School's Bolch Judicial Institute has sponsored an Electronic Discovery Reference Model ("EDRM") developing best practices guidance for conducting cross-border data transfers.