**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KRISTEN BEHRENS, ESQ.,** as Administratrix, et al.<br><br>          **v.**<br><br>**ARCONIC, INC.,** et al. | **CIVIL ACTION**<br><br>**NO. 19-2664** |

**Baylson, J.**                                                                                    **December 20, 2019**

<u>MEMORANDUM RE: FRENCH BLOCKING STATUTE</u>
<u>AND APPOINTMENT OF NOËLLE LENOIR</u>

## I.     Introduction

One of the issues that has arisen in the pretrial proceedings in this Court concerns the so-called French Blocking Statute[1] that the Arconic Defendants ("Arconic") rely on to limit discovery of the entity controlled by or related to Arconic that is referred to as "AAP SAS."  The Court provided notice to the parties of its intent to appoint an expert on French law to analyze the relevance of the French Blocking Statute to the AAP SAS discovery dispute.  (ECF 86.)[2]

This Memorandum summarizes the discovery issues implicated by the French Blocking Statute that arise from AAP SAS's role in manufacturing and selling the allegedly defective Reynobond PE cladding to the Grenfell Tower.  The Court has decided to appoint Noëlle Lenoir as a combination master and expert under Federal Rules of Civil Procedure 44.1 and 53, and

---

[1] The French Blocking Statute provides that "[s]ubject to treaties or international agreements, it is prohibited for any individual of French nationality or who usually resides on French territory and/or for any officer, representative, agent or employee of an entity having a head office or establishment in France to communicate to foreign public authorities, in writing, orally or by any other means, anywhere, documents or information relating to economic, commercial, industrial, financial or technical matters, the communication of which is capable of harming the sovereignty, security or essential economic interests of France or contravening public policy, specified by the administrative authorities as necessary."  The French Blocking Statute allows for the imposition of a fine and/or term of imprisonment for violation.

[2] Unless the name of the filing is relevant to this Memorandum, the Court will only use docket numbers to reference submissions.

Federal Rule of Evidence 706, to consider these questions and to prepare a Report and Recommendation concerning the relevance and potential impact of the French Blocking Statute.

## II.     AAP SAS, the Discovery Dispute, and the French Blocking Statute

### A.  AAP SAS's Relationship to this Matter

According to Arconic, its French subsidiary AAP SAS was the entity that manufactured and sold the Reynobond PE cladding to the Grenfell Tower that allegedly exacerbated the conflagration.  (ECF 49-1 at 16.)  Arconic cites the defense declarations of Paul Darling, (ECF 51-2 ¶ 36), and Kevin Juedeman, (ECF 51-6 ¶ 10), in support of their contention, (ECF 49-1 at 5.)

Arconic asserts there can be no dispute that AAP SAS manufactured and sold the Grenfell Tower Reynobond PE cladding, and that this fact is "established by judicially noticeable documents upon which the plaintiffs rely in their [C]omplaint."  (ECF 54 at 9.)  In particular, Defendants highlight two citations made by Plaintiffs:

1. **Paragraph 311 of Plaintiffs' Complaint**, which includes a picture of a European marketing brochure for Reynobond PE cladding that was—according to Arconic— produced by AAP SAS, not Arconic, (ECF 49-1 at 5); and

2. **Paragraph 316 of Plaintiffs' Complaint**, which states that "the Arconic Defendants' order acknowledgements and purchase orders confirm the total area of Reynobond 55 PE 4mm Smoke Silver Metallic E9107S DG 5000 Washcoat—the Reynobond PE cladding utilized on all floors from 4 upwards—being delivered to the Grenfell Tower was 6,586 m$^2$." (emphasis added).  The order acknowledgements that Plaintiffs refer to are included in the Appendix to Darling's declaration and suggest that AAP SAS was the seller of the Reynobond PE cladding for the Grenfell Tower.  (ECF 51-3 at 63–73.)

Plaintiffs' Complaint does not directly mention or address AAP SAS.[3]    In their Supplemental Memorandum, (ECF 100), Plaintiffs note that "the Reynobond PE cladding that was supplied to the Grenfell Tower allegedly originated from the French manufacturing facility of

---

[3] Plaintiffs allege that the cladding was designed, manufactured, and marketed by "Defendant Arconic, Inc. and/or its predecessor corporation Alcoa, Inc. and/or Arconic Architectural Products, LLC and/or their subsidiaries, sister corporations, predecessor entities, and/or successor entities."  (ECF 1, Compl. ¶ 9) (emphasis added).

Arconic's wholly-owned subsidiary, AAP SAS," (id. at 17) (emphasis added), but Plaintiffs do not confirm their agreement with Arconic's position that AAP SAS was the manufacturer.

### B. The AAP SAS Discovery Dispute and the French Blocking Statute

The AAP SAS discovery dispute involves the parties' disagreement about certain of Plaintiff's Requests for Production ("RFPs"). Defendants contend that the RFPs seek documents that are in the possession of AAP SAS, not Arconic.[4] (ECF 76 at 6.) However, although Arconic alleges that the documents are the property of AAP SAS, Arconic acknowledges that the documents, or at least a significant portion of them, are located in the United States. (Id.) The documents are in the United States because they were collected by AAP SAS's United Kingdom ("UK") and French counsel, who work in DLA Piper's UK and Paris offices. (Id.) These documents were transferred electronically to the United States because DLA Piper's relativity databases are located in New York. (Id.) However, Arconic maintains that the documents "are in the control of AAP SAS, and the data are not considered to be in the custody of its indirect parent, Arconic." (ECF 96 at 4.)

As part of Phase 1 of the UK's Public Inquiry into the Grenfell Tower fire, AAP SAS produced documents that were related to the refurbishment of the Grenfell Tower (the "refurbishment-related documents"). (Id. at 4–5.) Arconic agreed to provide these documents to Plaintiffs, although Plaintiffs, as Core Participants in the Public Inquiry, already have access to them.[5] (Id. at 5.) In addition to the refurbishment-related documents, AAP SAS also ultimately

---

[4] The RFPs are listed at Exhibit A to Plaintiffs' November 20, 2019 Statement Concerning the Status of Discovery; Exhibit A is available at ECF 87-1. Defendants previously described the AAP SAS documents that implicated the French Blocking Statute as the documents that are responsive to RFPs 9-14. (ECF 76 at 6.)

[5] During the November 25, 2019 hearing, Plaintiffs' counsel informed the Court that although Plaintiffs have access to these documents as Core Participants in the Public Inquiry (where they are represented by UK counsel), Plaintiffs' counsel in this litigation do not. (ECF 93-1, Nov. 25, 2019 Hr'g Tr. 64:4–13.) Plaintiffs' counsel advised that because of the Public Inquiry's policies, Plaintiffs' counsel in this litigation cannot get access to the Public Inquiry documents. (Id. 64:14–21.)

produced internal communications regarding the sale of Reynobond PE cladding to the Public Inquiry, but this production occurred only after the London Metropolitan Police Service and the French government negotiated a European Investigative Order ("EIO") allowing AAP SAS to produce the documents without violating the French Blocking Statute (the "EIO documents"). (Id.) According to Arconic, any of the EIO documents that the Public Inquiry considers relevant will soon be made available to the Core Participants for Phase 2 of the Public Inquiry. (Id.)

The French Blocking Statute therefore poses distinct difficulties for this case. These difficulties first surfaced in the November 30-Day Discovery Updates submitted by Plaintiffs and Defendants. (ECF 75 at 4–5 (Plaintiffs' Update); ECF 76 at 6–9 (Defendants' Update).) Defendants asserted that "[b]ecause AAP SAS is a French company, many if not most of the AAP SAS documents in the database are subject to the French Blocking Statute." (ECF 76 at 7.) Plaintiffs, by contrast, contended that "the law is quite clear" that the French Blocking Statute does not prohibit "Arconic from producing responsive documents located in the U.S. in a U.S.-based litigation." (ECF 75 at 4.) The Court provided notice of its intent to appoint an expert on French law to consider the impact of the French Blocking Statute on the AAP SAS discovery dispute and invited the parties to submit their positions regarding the appointment. (ECF 86.)

Plaintiffs and Defendants refined their arguments on the French Blocking Statute and views on the appointment of a French expert at oral argument on November 25, 2019 and in post-hearing reports. (ECF 96 (Defendants' Report); ECF 99 (Plaintiffs' Report).) Defendants' Report urged the Court to adopt one of two paths of disclosure that are available to foreign litigants and are designed to ensure compliance with the French Blocking Statute.[6] (ECF 96 at 6.) Defendants'

---

[6] The two paths highlighted by Defendants are (1) compliance with the Hague Convention and (2) authorization from the French government. First, a litigant can seek discovery through the Hague Convention without violating the French Blocking Statute since, per the text of the statute, the French Blocking Statute yields to international treaties

Report also clarified that it had no objection to the appointment of Ms. Lenoir if the Court thought an expert opinion would be helpful.  (Id. at 3.)  Plaintiffs, by contrast, argued that the appointment of a French expert is unnecessary because under well-established law, the French Blocking Statute does not bar the requested discovery.  (ECF 99 at 1.)  Plaintiffs cite numerous cases in which United States federal district courts have either ignored or minimized the relevance of the French Blocking Statute in the context of a discovery dispute.  (Id. at 6.)

The most recent discovery reports confirm that the parties have not reached resolution amongst themselves about the AAP SAS documents.  (ECF 101 at 7–8 (Plaintiffs' Report); ECF 102 at 11–12 (Defendants' Report).)  The Court therefore must address this dispute.

## III.  Legal Principles

### A. Legal Framework Governing Applicability of French Blocking Statute: Aerospatiale

The leading case on the French Blocking Statute is the Supreme Court's decision in Societe Nationale Industrielle Aerospatiale v. U.S. Court for S. Dist. of Iowa, 482 U.S. 522 (1987). Aerospatiale held that American courts need not give conclusive weight to foreign privacy laws. Id. at 542.  The Aerospatiale Court briefly noted its view on the French Blocking Statute, explaining that it "is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  Id. at 544 n.29.  Aerospatiale opined that "[t]he blocking statute … is relevant to the court's particularized comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material."  Id. (emphasis added).  However, the Aerospatiale Court was careful to note that

_____

or agreements.  (ECF 96 at 6.)  Second, a litigant can seek discovery by obtaining authorization from the French Service for Strategic and Economic Security ("SISSE").  (Id.)

"American courts … should exercise <u>special vigilance</u> to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." <u>Id.</u> at 546 (emphasis added).

The specific issue before the Court in <u>Aerospatiale</u> was whether the Hague Convention exclusively governed discovery simply because the evidence in question was sought from a French defendant located in France. <u>Id.</u> at 525–26. The Court declined to adopt a rule of exclusivity in favor of the Hague Convention, instead holding that district courts should engage in a comity analysis by scrutinizing "the particular facts, sovereign interests, and likelihood that resort to [Hague Convention] procedures will prove effective" in deciding whether the Hague Convention or domestic discovery rules apply. <u>Id.</u> at 544. In conducting this particularized comity analysis, five factors are relevant:

1. The importance to the litigation of the documents or other information requested;

2. The degree of specificity of the request;

3. Whether the information originated in the United States;

4. The availability of alternative means of securing the information; and

5. The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important  interests of the state where the information is located.

<u>Id.</u> at 544 n.28 (citing Restatement (Revised) of Foreign Relations Law of the United States § 437(1)(c) (Am. Law Inst. 1986)). Since <u>Aerospatiale</u>, lower federal courts have consistently applied these five comity factors to resolve discovery disputes involving the French Blocking Statute or similar statutory privacy protections. <u>See, e.g.</u>, <u>Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS</u>, 303 F. Supp. 3d 1004, 1007 (D. Ariz. 2018); <u>Ney v. Owens-</u>

Ill., Inc., Civil Action No. 16-2408, 2016 WL 7116015, at \*4–5 (E.D. Pa. Dec. 6, 2016) (Rueter, M.J.); Motorola Credit Corp. v. Uzan, 73 F. Supp. 3d 397, 401–03 (S.D.N.Y. 2014); Trueposition, Inc. v. LM Ericsson Tel. Co., Civil Action No. 11-4574, 2012 WL 707012, at \*5–6 (E.D. Pa. Mar. 6, 2012) (Kelly, J.); In re Air Cargo Shipping Servs. Antitrust Litig., 278 F.R.D. 51, 52–55 (E.D.N.Y. 2010); Bodner v. Paribas, 202 F.R.D. 370, 375–76 (E.D.N.Y. 2000).

### B. Legal Principles Governing Appointment of French Master and Expert: Federal Rule of Civil Procedure 53; Federal Rule of Evidence 706; and Federal Rule of Civil Procedure 44.1 and Animal Science

There are at least four sources that relate to the Court's authority to appoint Ms. Lenoir to opine on the applicability of the French Blocking Statute: Federal Rule of Civil Procedure ("FRCP") 53; Federal Rule of Evidence ("FRE") 706; and FRCP 44.1 as interpreted by the Supreme Court in Animal Science.

#### 1. FRCP 53

FRCP 53(a)(1)(C) permits a court to appoint a master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Id. This rule is commonly utilized in the context of complicated discovery disputes. See, e.g., In re Lincoln Nat'l COI Litig., No. 16-cv-6605, 2019 WL 3940912, at \*1 (Aug. 21, 2019) (Pappert, J.) ("[T]he Court notified the parties of its intent to appoint a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure to resolve repeated and anticipated discovery disputes.").

#### 2. FRE 706

FRE 706 permits a court "[o]n a party's motion or on its own" to appoint an expert witness that will enhance the court's understanding of a complex issue. Id. See generally Court-Appointed

Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706, Federal Judicial Center (1993).

        3.  FRCP 44.1 and Animal Science

In Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd., 138 S. Ct. 1865 (2018), the Supreme Court opined on how district courts should handle difficult questions of foreign law. Animal Science involved the application of FRCP 44.1, which specifies that, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Id.

The opinion provided general guidance about how a district court should determine questions of foreign law. Animal Science advised that "in ascertaining foreign law, courts are not limited to materials submitted by the parties; instead, they may consider any relevant material or source … whether or not … admissible under the Federal Rules of Evidence." 138 S. Ct. at 1873 (internal quotations omitted). According to the Animal Science Court, the "'obvious' purpose of … Rule 44.1 … [i]s to make the process of determining alien law identical with the method of ascertaining domestic law to the extent that it is possible to do so." Id. (quoting Wright & Miller § 2444, at 338–342).

## IV.   Discussion

The Court will appoint Ms. Lenoir as a master and expert to prepare a Report and Recommendation on how the French Blocking Statute applies, if at all, to the circumstances of the AAP SAS discovery dispute. Ms. Lenoir is a partner at the Kramer Levin law firm in Paris, France and a former member of the French Constitutional Court. Ms. Lenoir's extensive expertise in French law, discovery issues, and the French Blocking Statute makes her uniquely qualified to

analyze and opine on the relevance of the French Blocking Statute.  Under FRCP 53 and FRE 706, the Court determines that Ms. Lenoir's appointment will help the Court achieve resolution of this difficult issue.[7]  In deciding to appoint Ms. Lenoir, the Court also relies on the broad discretion that <u>Animal Science</u> indicates federal district court judges have under FRCP 44.1 when addressing complicated questions of foreign law.  <u>See</u> 138 S. Ct. at 1873 ("Rule 44.1 frees courts to reexamine and amplify material … presented by counsel in partisan fashion or in insufficient detail.") (internal quotations omitted).

Finally, this Court's decision is informed by the principles of the Sedona Conference, a nonprofit think tank that sponsors conferences and publishes reports which have contributed valuable guidance on many topics.  The Sedona Conference issued pioneering principles to govern discovery disputes in litigation regarding electronically stored information.  The Sedona Conference convened a "Working Group 6" some years ago to develop standards for cross-border discovery.  The undersigned has been an invited speaker at many Sedona conferences and has participated in discussions with judges and lawyers from foreign countries, including Great Britain, other European Union countries, and various Asian countries.

As a general matter, robust pretrial discovery as practiced in the United States is not accepted in most foreign countries, including England and France.  <u>See, e.g.</u>, Discovery in International Civil Litigation: A Guide for Judges, Federal Judicial Center (2015) at 66 ("Pretrial discovery of documents as understood in common law countries is not available in France. Requests for the production of evidence are governed by Articles 138 and 139 of the [Code of Civil Procedure], which allow a party during the course of a proceeding to request a judge to order

---

[7] The Court notes that it is not unprecedented to make a combination appointment under FRCP 53 and FRE 706.  <u>See, e.g.</u>, <u>Adams v. Honolulu</u>, Civil No. 12-667, 2017 WL 2938195, at *1 (stating that individual would be appointed as "Special Master and Expert" pursuant to FRCP 53 and FRE 706).

the production of evidence."); <u>id.</u> at 78 ("Pretrial discovery of documents as understood in the United States is not available in the United Kingdom.").  Many countries have rules prohibiting pretrial discovery.  Some countries, including England, give the trial judge discretion to require exchange of facts and information at a point close to the start of trial.

The applicability of the French Blocking Statute in United States litigation is one example of the often difficult and complex problems that arise in cross-border discovery.  In an effort to provide guidance in this frequently fraught area, the Sedona Conference developed several principles that can help this Court and others in achieving a fair result.  The Sedona Conference guidance is as follows:

**Principle 1**
With regard to data that is subject to preservation, disclosure, or discovery in a U.S. legal proceeding, courts and parties should demonstrate due respect to the Data Protection Laws of any foreign sovereign and the interests of any person who is subject to or benefits from such laws.

**Principle 2**
Where full compliance with both Data Protection Laws and preservation, disclosure, and discovery obligations presents a conflict, a party's conduct should be judged by a court or data protection authority under a standard of good faith and reasonableness.

**Principle 3**
Preservation, disclosure and discovery of Protected Data should be limited in scope to that which is relevant and necessary to support any party's claim or defense in order to minimize conflicts of law and impact on the Data Subject.

Sedona Conference Traditional and Rationally-Issued Principles on Discovery Disclosure and Data Protection (Transitional Edition, Jan. 2017).

Ms. Lenoir's Report and Recommendation will help the Court resolve the AAP SAS discovery dispute consistent with United States law and consistent with the practical principles expressed by the Sedona Conference.

## V.    Conclusion

For the foregoing reasons, the Court will enter an order appointing Ms. Lenoir as a combination master and expert pursuant to FRCP 44.1, FRCP 53, and FRE 706 to prepare a Report and Recommendation concerning the impact of the French Blocking Statute, if any, on the AAP SAS discovery dispute.  The Court directs payment of an initial retainer for her services, with the anticipation of receiving her Report and Recommendation.  The Court will forward to Ms. Lenoir copies of the briefs and reports that have been filed by the parties on the issue of the French Blocking Statute.

An appropriate order follows.

O:\CIVIL 19\19-2664 Behrens v Arconic\19cv2664 memorandum re French Blocking statute.docx