**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KRISTEN BEHRENS, ESQ., as Administratrix, et al.** <br><br> v. <br><br> **ARCONIC, INC., et al.** | **CIVIL ACTION** <br><br> **NO. 19-2664** |

**MEMORANDUM RE: Rule 59(e) MOTION TO ALTER OR AMEND
SEPTEMBER 16, 2020 ORDER**

Baylson, J.                                                                                                November 23, 2020

### I.   Introduction

Plaintiffs have filed a Motion under Rule 59(e) to alter or amend the Court's September 16, 2020 Order, granting Defendants' Motion to Dismiss under the doctrine of *forum non conveniens* ("FNC"), with conditions and without prejudice.

"A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010).

Most of the Plaintiffs' grounds can be rejected, as thoroughly covered in the Court's one-hundred-page memorandum, ECF 235 ("Memorandum"), without further discussion. These include Plaintiffs' arguments that this Court did not grant proper deference to Plaintiffs' choice of forum, did not correctly state Pennsylvania law, did not assign appropriate weight to the location of physical evidence and to the Public Inquiry, and did not properly consider proportionality.

Further discussion, however, must take place on the issue of punitive damages in light of the parties' briefing. Both parties challenge the Court's proposed procedure—for enabling assessment of potential punitive damages, Paragraph 2(h) of the Order. ECF 236.

Without repeating the extensive discussion in the Memorandum, Plaintiffs have asserted strong arguments that Arconic should be responsible for punitive damages that are not recognized under English law, based on the FNC discovery. See Memorandum at 15–22, 40–45.

For the reasons stated in the Memorandum, which will not be repeated here, this Court declined to make any specific findings on the issue of damages. The briefing, including expert reports, concluded that punitive damages, while permissible under Pennsylvania law, are not accepted under English law. Therefore, in the Order granting FNC dismissal, this Court specifically noted that the dismissal of Plaintiffs' punitive damages claims would be "without prejudice." Paragraph 2(h) of the Order states as follows:

> If the UK court determines that Pennsylvania law (or the law of another state in the United States) applies to damages and that one or both Defendants may be liable for punitive damages, but decides to grant dismissal of the damages phase without prejudice in the UK for determination in the US, Plaintiffs may reinstate this action in this Court.

## II.   Plaintiffs' Challenge to Paragraph 2(h)

In the Plaintiffs' Rule 59(e) motion, pages 15-20, they have not explicitly objected to Paragraph 2(h), but have not completely embraced it, based on their continued position that this Court should retain the claim for punitive damages and allow discovery and possibly a trial of punitive damages, perhaps before any finding of liability in the UK.[1]

---

[1] This Court at one point, during a hearing, mentioned the possibility of bifurcation of liability and damages, sending the liability claims to the UK, retaining the damage claims in this Court. Both parties rejected this. See page 15, footnote 3 of Plaintiffs' motion.

Having considered Plaintiffs' arguments, we must conclude that retaining and proceeding with a portion of the case concerning punitive damages, before any finding of liability, would be inconsistent with Supreme Court, Third Circuit, and Pennsylvania precedents on FNC jurisprudence and damages.

### III.     Arconic's Challenge to Paragraph 2(h)

In Arconic's response to the Rule 59(e) motion — without filing an independent motion to reconsider — Arconic specifically requests this Court to alter or amend its judgment, and eliminate Paragraph 2(h) as improper, arguing that this Court would not have jurisdiction over punitive damages even if the case is returned by a UK court. ECF 240 at 17.

As emphasized in various portions of the Memorandum, the subject matter of this case is a tragedy that claimed the lives of seventy-two people and injured hundreds more, under factual circumstances that might warrant a finding of liability against not only Arconic, but perhaps numerous others that were involved in the design, construction, and maintenance of the Grenfell Tower.  These horrendous facts call for a broad avenue for the Plaintiffs to secure damages to the full extent of the law and to the extent they are successful in proving liability; Paragraph 2(h) preserves that potential.

Arconic's briefing relies primarily on language in In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December 1984, 809 F. 2d 195, 205 (2d Cir. 1987) ("Union Carbide"). Specifically, Arconic contends that a court cannot use a conditional FNC dismissal to retain jurisdiction over any part of the litigation.  Union Carbide's discussion, however, concerned a US court's attempt to retain a pseudo-appellate role over the Indian court proceedings — as initially ordered, the US court retained jurisdiction to review any perceived due process violation in the foreign court.  Doing so would have impermissibly "impose[d] our due process requirements on Indian courts," id., and not, as here, simply have afforded that foreign venue the discretion to return

3

issues of punitive damages to the original US venue. Union Carbide does not countermand the Order in this case. To the contrary, the Union Carbide court (and many other decisions, discussed below) recognized that it is appropriate on some occasions to condition an FNC dismissal on the defendant's consent to key protections, and/or specific court provisions.

The Memorandum recognizes that allowing this possibility is a novel procedural option, but Arconic has not cited any precedent that Paragraph 2(h) is improper. In evaluating Plaintiffs' and Arconic's challenges to Paragraph 2(h), the Court will first address the procedural mechanism of dismissal without prejudice, and will then examine federal law decisions from the Supreme Court and circuit courts, as well as cases under Pennsylvania state law, regarding dismissals without prejudice[2] and conditional FNC dismissals. Finally, the Court will review similar resolutions by sister courts within the Third Circuit, and concludes we can exercise future jurisdiction over punitive damages if ordered by the UK court. Based on these analyses, the Court concludes that Paragraph 2(h) is lawful and proper.

### A. Dismissal without Prejudice as a Procedural Mechanism

A "dismissal without prejudice" is a common judicial tool that effectively reserves certain issues for a future determination. The concept of dismissing a case without prejudice carries the connotation that the Plaintiffs' claims are not completely extinguished and may be revived in some manner.

   1. This Court has authority to dismiss this case without prejudice.

A Court has the authority to dismiss a case without prejudice but maintain ongoing jurisdiction over it. Any judge has the option, if the facts warrant, of leaving open certain claims

---

[2] In ruling on Rule 12 motions to dismiss, judges often grant a motion to dismiss a complaint, in whole or part, "without prejudice" which usually carries the right to file an amended complaint; this discussion will exclude any references to cases decided in these limited Rule 12 circumstances.

by noting that they are dismissed "without prejudice" — i.e., when events may take place in the future that would warrant a specific claim once again becoming "live." In this sense, a claim dismissed without prejudice could be characterized as "dormant" or "in suspense." Many courts, including this district court, have a "suspense docket" where a judge may place a case, impacted by events, such as a petition for bankruptcy or the sudden death of one of the parties, which may prevent the court from proceeding further at that point in time. See Standing Order dated June 24, 1975. Placing a case in "suspense" keeps the case under the court's jurisdiction but renders it dormant such that the parties are not prejudiced by the new situation. This Court has the authority to do so here.

    2. <u>A dismissal without prejudice clarifies the Court's ruling for UK adjudication</u>

Dismissal without prejudice ensures that the UK court is not bound to reject any of Plaintiffs' damages claims by interpreting the FNC dismissal in this Court as a rejection of Plaintiffs' damages claims on their merits. In the absence of this procedural order, the UK court may have construed this Court's FNC ruling as a dismissal of all punitive damages claims with prejudice, perhaps based on Defendants' representation that punitive damages are not allowed under English law. Thus, this Court added "without prejudice," with specific language, so there could be no misunderstanding.

   **B. Supreme Court Precedent**

The US Supreme Court has commented on and approved the concept of dismissing a case without prejudice in several contexts.

In <u>Semtek International Inc. v. Lockheed Martin Corp</u>, the Supreme Court considered "whether the claim-preclusive effect of a federal judgment dismissing a diversity action on statute-of-limitations grounds is determined by the law of the State in which the federal court sits." 531 U.S. 497, 499 (2001). In doing so, the Court considered the meaning of a dismissal by a district

5

court "on the merits and with prejudice." Id. The Court looked to Rule 41(a) which it found "makes clear that an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice.'" Id. at 505. In determining the meaning of a dismissal without prejudice, the Supreme Court explained that

> The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the defendant from **returning later, to the same court**, with the same underlying claim. That will also ordinarily (though not always) have the consequence of not barring the claim from other courts, but its primary meaning relates to the dismissing court itself.

Id. (emphasis added).

In Arizona v. San Carlos Apache Tribe, 463 U.S. 545, 550 (1983), the Court considered whether Colorado River abstention required federal courts to dismiss a case in which there were already pending state proceedings. In holding that the federal courts should defer to the state proceedings, the Court also left "open for determination on remand whether the proper course in such cases is a stay of the federal suit or dismissal without prejudice." Id. at 570 n.21. The Court found that either a stay or dismissal without prejudice would serve the goal of ensuring that "resort to the federal forum should remain available if warranted by a significant change of circumstances, such as, for example, a decision by a state court that it does not have jurisdiction over some or all of these claims after all." Id. Under similar circumstances in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., the Court repeated the conclusion that, in the context of Colorado River abstention, a stay and a dismissal without prejudice are the same. 460 U.S. 1, 28 (1983). The Court explained that under either circumstance the federal courts would "remain open to a dismissed plaintiff who later demonstrated the inadequacy of the state forum." Id.

The Supreme Court has discussed that FNC dismissal may be conditional, particularly "upon the condition of the defendant's voluntary submission to the jurisdiction of another more

6

convenient forum when that forum was not available to the plaintiff as of right over the defendant's objection." Hoffman v. Blaski, 363 U.S. 335, 364 (1960) (Frankfurter, J., dissenting) (collecting examples of conditional FNC dismissal). The Court has also approved of the notion that "district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 n.25 (1981).

### C. Circuit Court Precedents

There are a number of federal circuit decisions which have ordered dismissal of cases under the FNC doctrine with conditions, holding that the case can be returned to the originating court if the conditions are not met — the same result as in a dismissal without prejudice.

In Sigalas v. Lido Maritime, Inc., 776 F.2d 1512 (11th Cir. 1985), the court emphasized that a finality-of-judgment analysis "must focus on the underlying effect of a dismissal rather than on a parsing of the language of the order." Id. at 1516. The court noted that the trial court order at issue

> does not purport to retain any even vestigial jurisdiction over the alleged causes of action. The order does not stay the actions pending fulfillment of its conditions; it does not provide for the court to reexamine at any future date the merits of the issues it had considered; nor does it contemplate the entry of any further orders regarding the merits of any such determinations, or provide for automatic reinstatement of the suit upon the failure of the appellees to conform to its conditions . . . Hence . . . the conditions imposed in the district court's order of dismissal act in practical manner as conditions *subsequent* to the dismissal, not as conditions precedent.

Id. (quoting Cuevas v. Reading & Bates Corp., 770 F.2d 1371, 1376 (5th Cir. 1985)). "[D]ismissal for inconvenience will function in a fashion similar to dismissals without prejudice," because, "should the defendant not abide by his representations to the original court[,] the plaintiff may return promptly to the original forum and be heard." Id.

7

In <u>Yavuz v. 61 MM, Ltd.</u>, 576 F.3d 1166, 1182 (10th Cir. 2009), the Circuit Court upheld conditions that the district court required for its dismissal. In the proceedings below, the Defendants were amenable to a lawsuit in Switzerland, and agreed to stipulate that they would submit to the jurisdiction of the court in Fribourg. <u>Id.</u> Accordingly, the district court dismissed the suit with two conditions: first, that the Defendants enter into a written agreement with Plaintiff to submit to the jurisdiction of the courts of Fribourg, Switzerland; and second, that the case may be reinstated in the event that the Swiss court declined jurisdiction. <u>Id.</u> The Court noted that "[w]hile such conditions are within the district court's discretion, they are not mandatory for a proper forum non conveniens dismissal." <u>Id.</u> (citing <u>Magnin v. Teledyne Cont'l Motors</u>, 91 F.3d 1424, 1430 (11th Cir. 1996) (district court may attach conditions to a FNC dismissal to which defendants may agree)).

There have been other cases where, even though a district court did not adopt certain conditions, the circuit court held on appeal that it would add conditions for an FNC dismissal.

In <u>Aviation One of Florida, Inc. v. Airborne Insurance Consultants (PTY), Ltd.</u>, 722 F. App'x 870 (11th Cir. 2018), the Court concluded that the Plaintiff could reinstate its lawsuit against one defendant without undue inconvenience or prejudice, because that defendant was "amenable to service of process in England, and . . . stipulate[d] that it will consent to service of process in England and toll any applicable statute of limitation in England as a condition of the dismissal." <u>Id.</u> at 885–86 (internal quotation marks omitted). Although those conditions were not included in the district court's dismissal order, the Eleventh Circuit modified the order to include them. <u>Id.</u> at 886 (citing <u>Leon v. Millon Air, Inc.</u>, 251 F.3d 1305, 1315 (11th Cir. 2001) (modifying a dismissal order to include a defendant's stipulations that it will submit to the jurisdiction of a foreign court)

and Magnin, 91 F.3d at 1430–31). Given those modifications, the panel affirmed the FNC dismissal of the claims against the defendant. Id. at 886.

Likewise, in King v. Cessna Aircraft Co., 562 F.3d 1374 (11th Cir. 2009), the circuit court modified the order dismissing a cause of action on FNC grounds to allow the plaintiffs to pursue their claims in the alternative forum of Italy. Id. at 1384. The modifications required the Defendant-manufacturer to "submit to the jurisdiction of the Italian courts and waive the statute of limitations." Id. It further modified the order so that "any case dismissed pursuant to the district court's order could be reinstated in the event that jurisdiction to entertain such a case is rejected by a final decision of a court in Italy." Id.

By way of further example, the Second Circuit in USHA (India), Ltd. v. Honeywell International., Inc., 421 F.3d 129 (2d Cir. 2005), explained:

> we think that it is "just under the circumstances" of this case to modify the district court's judgment of dismissal so that it is without prejudice to the plaintiffs' ability, by motion brought before the district court, to reinstate this action within a reasonable period of time hereafter, depending on the course of litigation, if any, in the New Delhi High Court. We further modify the judgment to make the dismissal contingent upon the defendants' waiving of any statute-of-limitations defense that would bar this case, if promptly hereafter commenced, from being heard in an Indian forum. The case shall be placed on the district court's suspense docket if so dismissed. The dismissal is without prejudice only insofar as the plaintiffs may make the motion referred to above in the district court to reinstate this action no sooner than eighteen months and no later than two years after the date hereof.

Id. at 136. This Court's procedural mechanism under Paragraph 2(h) is nearly identical to that in USHA.

### D.  Pennsylvania Law Precedents

This Court must consider Pennsylvania law on the concept of dismissal without prejudice because the Complaint in this case exclusively raised common law claims and was removed to this

9

Court by virtue of the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1446, and 1453. ("CAFA"). Under this statute, Congress conferred federal jurisdiction over certain cases which, prior to CAFA, could only have been brought in state court; but could be filed in, or removed to, federal district court under certain conditions, which occurred here. Nonetheless, although this case is pending in federal court and federal procedural rules apply, the substantive law is that of Pennsylvania.

Under Pennsylvania law, a statute authorizes that a court "may stay or dismiss [a] matter in whole or in part on any conditions that may be just" "when [it] finds that in the interest of substantial justice the matter should be heard in another forum." 42 Pa. Cons. Stat. § 5322(e); see Scott v. Consol. Rail Corp., No. 2540 EDA 2013, 2014 WL 10750730, at *3 (Pa. Super. Ct. Dec. 22, 2014). Citing this statute, many trial courts have placed conditions on dismissals without prejudice. See, e.g., L.M. v. MacBello, No. 985 EDA 2012, 2013 WL 11266921, at *1 (Pa. Super. Ct. Apr. 16, 2013) (dismissing on the basis of FNC with the condition that defendant accept service and waive statute of limitations defense in alternative forum); Shears v. Rigley, 623 A.2d 821, 826 (Pa. Super. Ct. 1993) ("[D]ismissal on forum non conveniens grounds . . . is permissible if certain if conditions are established to eradicate the prejudice to the plaintiff.").

Pennsylvania law-based decisions regarding dismissal without prejudice broadly support the well-settled proposition that dismissals without prejudice do not entail a decision on the merits and the claims may be reinstated at a later time. See, e.g., Catalytic, Inc. v. W.C.A.B. (Gwin), 516 A.2d 854, 854–55 (Pa. Commw. Ct. 1986). In addition to ordering jurisdictional conditions discussed above, some of the cases reflect the idea that a plaintiff, after a dismissal without prejudice, may return to the originating court to seek relief if alternative paths to relief are unfruitful. For example, one trial court dismissed without prejudice an action filed in the Court of

10

Common Pleas so the plaintiff could refile the claim in the Orphans' Court. The dismissal order's language, upheld by the appellate court, specified that "[i]f the Orphans' Court decides there is a substantial factual dispute, it may submit an issue to be tried by a jury in this [Court of Common Pleas]." Hoak v. Under, 18 A.2d 105, 107 (Pa. Super. Ct. Jan. 30, 1941).

### IV. Courts Within the Third Circuit Have Applied the Concept of Dismissal Without Prejudice in the FNC Context with Dismissal Subject to Conditions

"[T]he district court is accorded substantial flexibility in evaluating a forum non conveniens motion, and '[e]ach case turns on its facts.'" Delta Air Lines, Inc. v. Chimet, S.p.A., 619 F.3d 288, 294 (3d Cir. 2010) (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988)). A court may attach conditions to its dismissal, among other reasons, where needed "to preclude the possibility that defendants in a forum non conveniens dismissal are not insulated from the plaintiff's claims in the foreign forum." Oxley v. Wyeth Labs., Inc., No. 91-1285, 1992 WL 185590, at *2 (E.D. Pa. July 23, 1992) (Hutton, J.).

District Courts within the Third Circuit have long exercised authority to require key conditions to protect plaintiffs' claims when granting FNC dismissals. For example, in Jones v. FC USA, Inc., the court dismissed on FNC grounds subject to the condition that the defendants waive any statute of limitations defenses abroad. No 17-1126, 2017 WL 5453497, at *5 (E.D. Pa. Nov. 14, 2017) (DuBois, J.). This practice is not novel. See, e.g., Acuña-Atalaya v. Newmont Mining Corp., 308 F. Supp. 3d 812, 827 (D. Del. 2018) ("Acuña-Atalaya I") (conditioning FNC dismissal on defendant's stipulation of Peruvian court's adequacy); Winex, Ltd. v. Paine, No. 89-2083, 1990 WL 121483, at *9 (E.D. Pa. Aug. 15, 1990) (Shapiro, J.) (conditioning FNC dismissal on defendants' waiver of statute of limitations and personal jurisdiction arguments); Bastas v. Atl. Maritime Enters. Corp., No. 86-6962, 1988 WL 48547, at *3 (E.D. Pa. May 13, 1988) (Shapiro, J.) (same); Abiaad v. Gen. Motors Corp., 538 F. Supp. 537, 544 (E.D. Pa. 1982) (Weiner, J.)

11

(conditioning FNC dismissal on defendant's waiver of statute of limitations arguments and consent to make domestic evidence available abroad).

Inherent to the concept of a conditional dismissal is the dismissing court's authority to reexamine its dismissal if its conditions are violated. Although perhaps not common, case law in the Third Circuit demonstrates that conditional FNC dismissal does not erase the initial court's jurisdiction; indeed, the court may need to intervene where the breach of a condition would jeopardize the suitability of the receiving jurisdiction.

The most analogous case, which the Court previously cited in its Memorandum, ECF 235 at 36 n.28, is Abiaad v. General Motors Corp. In Abiaad, an American-made car burst into flames while it was in the United Arab Emirates, injuring plaintiffs there. The Abiaad court weighed many of the same factors discussed in this Court's Memorandum: the location of the injury, the witnesses, the vehicle's wreckage, and other key evidence convinced the court to grant the defendant's motion to dismiss for FNC. In granting the dismissal, however, the court attached several conditions to ensure the change in jurisdiction would not shield the defendant from plaintiffs' claims. 538 F. Supp. at 544. The court granted FNC dismissal without prejudice, but only subject to those conditions. If the plaintiffs certified that they were "unable to receive an adjudication" under the terms the court prescribed, they could "so certify to this court and return here to apply for the reinstitution of their claims." Id. at 545. The Third Circuit affirmed the Abiaad decision. 696 F.2d 980 (3d Cir. 1982).

The Third Circuit also compelled a similar return to the original court where one of the major conditions of the FNC dismissal failed. In Acuña-Atalaya I, the district court conditioned its FNC dismissal upon "Defendants' stipulation that the judicial situation in Peru qualifies as legally adequate." 308 F. Supp. 3d at 827. Following this dismissal, however, the Peruvian

12

judicial system "collapsed" in scandal. Acuña-Atalaya v. Newmont Mining Corp., 765 F. App'x 811, 814 (3d Cir. 2019) ("Acuña-Atalaya II"). The Third Circuit remanded the case to the original court to make the factual redetermination whether FNC dismissal remained appropriate. Id. Although the appellate panel addressed the issue in terms of changing factual circumstances and their effect on the district court's initial reason, the Acuña-Atalaya II opinion reflects the same logic that this Court exercised in the Memorandum — if one of the conditions precedent to the FNC dismissal fails, the district court retains jurisdiction over the proceedings and can reevaluate the FNC dismissal.

Because courts have broad discretionary authority to craft conditional dismissals to protect the claims of the parties, this Court's decision to preserve Plaintiffs' claims for punitive damages through Paragraph 2(h) was appropriate under the facts of the case, and within the Court's discretion under settled legal principles.

### V. Plaintiffs' Newly Alleged Violation of Paragraph 2(e) of the Order Granting FNC Dismissal

In Plaintiffs' Reply Brief, ECF 242, Plaintiffs have newly alleged a breach of another condition of the FNC dismissal, Paragraph 2(e), which requires Defendants, in the subsequent proceeding to be filed in the United Kingdom, to "make available in England all evidence necessary for a fair and just resolution of this case, including documents and witnesses." In their reply brief, referencing Exhibit A and B, Plaintiffs assert that Arconic has directed certain Arconic witnesses not to testify in the UK Public Inquiry, which violates Paragraph 2(e).

By way of background, the United Kingdom established a Public Inquiry to investigate the Grenfell fire. Certain details of this were set forth in the Memorandum, 7–8, 69–71. In Arconic's surreply, ECF 245, Arconic maintains that it has not acted as Plaintiffs suggest and gives additional background to the issue concerning Paragraph 2(e), which requires this Court to conclude that

13

Arconic has not violated Paragraph 2(e).  Plaintiffs have filed a surreply, ECF 247, which asserts that the Arconic witnesses are represented by Arconic counsel in the UK, including some former employees of AAP SAS whom Plaintiffs have attempted to interview.  Plaintiffs strongly argue that this Court should and can take over the supervision of fact gathering, and perhaps reappoint Noelle Lenoir, Esq., a former French judicial officer who served as this Court's expert on French law in this case and also as the Commissioner under the Hague Convention proceedings, to supervise the gathering of evidence from witnesses in France.

From the discussion in the briefs and exhibits, summarized, it appears that certain employees of AAP SAS, which the Court considers to be part of Arconic, whether an affiliate or subsidiary, who reside and/or work in France, have declined so far to testify in the UK Public Inquiry, based on the advice from their personal attorneys and the provisions of a French law referred to as the French blocking statue ("FBS").  A short discussion of the FBS is found in this Court's earlier Memorandum, at 17–20.

Arconic insists it is not in any way responsible for the refusal, so far, of these witnesses to testify.  According to Arconic's brief, criminal liability in France could apply to an individual who violates the FBS.

Arconic maintains that the UK Public Inquiry may be able to obtain this testimony voluntarily, or through negotiations.  It remains an open issue.  Arconic also asserts that the Public Inquiry is limited in its ability to compel witness testimony under English law.  Similarly, the Hague Convention may not be available to provide testimony to the Public Inquiry for witnesses residing in France.

This Court concludes that it should not make any decision on this issue, at least in part because the proceedings before the UK Public Inquiry were not stated in this Court's order as a

condition of FNC dismissal.  In noting this, the Court is not critical of any party or counsel in this case but is simply stating a fact.

The terms of Paragraph 2(e) only pertain to the subsequent damages litigation to be filed in the UK after the FNC dismissal in this Court.  The refusal of certain individuals employed by AAP SAS to testify in the Public Inquiry, which is, of course, a very important event, but a much different proceeding than a damages lawsuit filed in the UK court, does not warrant finding a breach of the Order of September 16, 2020.

## VI.   Conclusion

For the above reasons, the Court concludes that it must deny Plaintiffs' Rule 59(e) motion. An appropriate Order follows.

O:\CIVIL 19\19-2664 Behrens v Arconic\19cv2664 Memorandum on Motion for Reconsideration 11232020.docx